## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-20998-CIV-LENARD/TURNOFF

**CAROLYN BAILEY and TRAVIS
BAILEY,**

Plaintiffs,

vs.

**CITY OF MIAMI BEACH, OFFICER
WAYNE HOLBROOK, OFFICER
JOSE REINA, OFFICER DIMITRI
GOTSIS and OFFICER
ALEXANDER TORRES,**

Defendants.

_____/

## OMNIBUS ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT OFFICERS' MOTION FOR SUMMARY JUDGMENT (D.E. 51) AND DENYING DEFENDANT CITY OF MIAMI BEACH'S MOTION FOR SUMMARY JUDGMENT (D.E. 57)

**THIS CAUSE** is before the Court on Defendants Wayne Holbrook, Jose Reina,

Alexander Torres and Dmitri Gotsis' ("Officers") Motion for Summary Judgment (D.E. 51),

filed on April 24, 2011 and Defendant City of Miami Beach ("City") Motion for Partial

Summary Judgment (D.E. 57), filed on May 9, 2011.  Plaintiffs Carolyn and Travis Bailey,

filed their respective Responses (D.E. 61 and 62) to Defendants' Motions on June 1, 2011

to which the City and Officers replied on June 10 and 20, respectively (D.E. 65 and 66).[1]

Upon review of the Motions, the Responses, the Replies and the record, the Court finds as

---

[1]     The Officers filed their Statement of Facts(D.E. 52) and exhibits (D.E.53-1
through 16) in support of their motion.

follows.

## I.      Factual and Procedural Background[2]

This case arises out of the arrest of Plaintiff Travis Bailey on the evening of June 30, 2006 at a Miami Beach hotel.  That day, Travis and his mother Carolyn arrived in Miami Beach and checked into the Courtyard by Marriott located at 3925 Collins Avenue.  They had intended their trip to be a vacation.

Around 8:30 p.m. that evening, Officer Torres, assigned to patrol the middle district of Miami Beach, observed Travis in the municipal parking lot at the 100 block of 36th Street on the corner of Collins Avenue.  Torres observed Travis approach one of the vehicles in the lot and look inside of it for approximately three to five seconds.  Because that parking lot had been the site of numerous automobile burglaries, Torres became alarmed by Travis' actions.

Torres exited his vehicle, approached Travis and asked him for identification.  Travis provided his North Carolina identification and informed Torres that he was staying at a Miami Beach hotel, giving Torres his hotel key card.  During a pat down to ensure officer safety, Torres recovered a knife from Travis.  He then conducted a reference check of Travis' identification over the radio.

While Torres was conducting a second pat down of Travis, he received notification over his radio that Travis had a non-extraditable warrant for his arrest in North Carolina.  Travis, apparently hearing this notification, allegedly struck Torres on his left shoulder, pulled Torres' police radio wire off his shoulder thereby disabling it, and fled.  After a brief

---

[2]        The facts are undisputed unless otherwise noted.

chase, Travis was able to evade Torres and returned to his hotel room at the Marriott. Torres called for backup and was assisted by Officers Holbrook and Reina, among others.

After visiting several hotels around the 3400 block of Collins Avenue, Holbrook and Reina arrived at the Marriott. The clerk confirmed that the hotel key card belonged to this hotel and a guest by the name of "Bailey" was registered in room 603. Holbrook and Reina requested a canine officer and additional patrol units. Officer Gotsis responded to the Marriot with his canine. Gotsis, Holbrook and Reina went to room 603.

The parties' accounts conflict as to what happened next.

According to the officers, they knocked on the door of room 603 and Carolyn answered. The officers identified themselves and inquired as to whether Travis was inside the room. Carolyn introduced herself as his mother and advised them that Travis was not there. The officers then read Carolyn her *Miranda* rights and asked for Travis' location. According to Holbrook, he saw Travis pop his head up from between two beds inside the room. He then commanded Travis to come out and the officers began to enter the room. Carolyn attempted to obstruct the officers from getting to Travis so Holbrook escorted her out of the room and asked her to remain outside.

Holbrook, Reina, Gotsis and the canine entered room 603. Holbrook grabbed Travis' leg and tried to pull him out from under the bed. As Travis rose, he became combative, kicking Holbrook in the left leg and punching Reina in the chest. Holbrook commanded Travis to stop resisting but Travis did not listen. After a brief scuffle, Reina struck Travis with his police baton on the right forehead and Travis fell to the ground. He was then

3

handcuffed by Holbrook and Reina.

During the entire encounter, which took approximately 45-60 seconds, Gotsis remained by the door and restrained his agitated canine physically and with verbal commands.  The canine had been barking at Holbrook, Reina and Travis.

Carolyn was also arrested for obstruction of justice.  She and Travis were escorted from the room to a police unit outside of the Marriot and placed in the back seat of a patrol car.  Miami Beach Fire Rescue was on the scene to treat Travis' lacerations and abrasions. Before they were transported to the station, Officer Torres identified Travis as the individual who had earlier assaulted him and evaded capture.  Once at the Miami Beach Police Department, Carolyn and Travis were processed.  Travis informed Holbrook and Reina that he had urinated blood and was subsequently taken to the hospital by Fire Rescue.

Carolyn's version of the events of that evening differs considerably.  Travis had returned to their hotel room that evening scared and sweaty.  He told her that he had encountered a police officer and ran away, omitting the details of his encounter with Torres and subsequent flight.  About twenty to thirty minutes later, she heard knocking on the door and men, who announced themselves as police, telling her to "[o]pen this fucking door, bitch."  Carolyn complied.  When told that the officers were looking for Travis, she raised her hands and said "[d]uh."  Travis was standing up next to the bed when the officers went to him, threw him on the bed and handcuffed him.  Then they started hitting him.

Carolyn recalls two of the officers began hitting Travis and one standing by, holding his police dog.  The officers quickly pushed her out of the room and into the hallway, locking

her out of the room.  She did not see any more of what occurred in the room but heard the officers hitting Travis and him screaming as he was being hit, "don't let that dog loose, please."  She estimates the entire encounter last no more than five minutes.

After an estimated five minutes passed, the officers unlocked the door and took Travis out, beaten and bleeding.  Carolyn rushed back into the room to make a phone call to her husband.  She was in the middle of the call when the officers pounded on the door again and told her she was under arrest on charges of obstruction of justice.  They handcuffed her and took her out of the hotel, putting her in the backseat of the police car with Travis.

Travis recalls that the officers simply entered the hotel room using his hotel keycard. They did not knock or announce themselves.  As soon as they entered, he stood and raised his hands in the air; in essence, surrendering.  He was wearing only his underwear.  The officers handcuffed Travis and pushed Carolyn out of the room.  After threatening to taser him, Reina and Holbrook beat him, striking him approximately fifteen times.  Gotsis stood inside the room the entire time.  He was holding the police dog, which was barking loudly. According to Travis, Gotsis did not physically or verbally attempt to stop the beating.

Travis was charged with three counts of Battery on a Law Enforcement Officer pursuant to Fla. Stat. § 784.07, one count of Carrying a Concealed Weapon pursuant to Fla. Stat. § 843.025, two counts of Resisting with Violence pursuant to Fla. Stat. § 843.01. Following trial in January 2008, a Dade County jury found Travis guilty of one count of Battery and one count of Depriving an Officer of Means of Protection or Communication.

Carolyn was charged with one count of Obstructing/Resisting Without Violence

pursuant to Fla. Stat. § 843.02.  The charge against her was later dropped.

Travis and Carolyn filed the instant suit on March 30, 2010 against Holbrook, Reina, Torres, Gotsis and the City of Miami Beach.  On March 23, 2011, Plaintiffs filed their Second Amended Complaint (D.E. 45).  The Second Amended Complaint includes civil rights claims of Wrongful Arrest (Count I), Excessive Force (Counts II, IV, V), Failure to Intervene (Count III) and Unlawful Entry (Count VIII), a common law claim of battery (Count VI) and common law false arrest (Count VII).

Defendants now move for partial summary judgment, seeking dismissal of Counts I, III, V, VII and VIII.  Defendants deny liability on the remaining counts but concede these claims contain material issues of fact.  In their Response, Plaintiffs agree that Defendants are entitled to summary judgment on Counts V and VIII.  Consequently, the Court will address only Counts I, III and VII.

## II.    Standard of Review

On a motion for summary judgment, the Court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).  A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party.  The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; *see also* FED. R. CIV. P. 56(e).  In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial." *Id.*

at 587. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Id.*

## III.  Discussion

### A.  Count I – Wrongful Arrest Against Reina (42 U.S.C. § 1983)

In Count I, Carolyn claims that her wrongful arrest at the hands of Officer Reina violated her Fourth Amendment right. She maintains that Reina lacked actual and arguable probable cause to arrest her for resisting an officer without violence in violation of Fla. Stat. § 843.02.

Reina[3] moves for summary judgment, claiming entitlement to qualified immunity. In support of his argument, he contends that he did not violate Carolyn's constitutional rights, as arguable probable cause existed for her arrest. In addition, he argues that a constitutional right was not clearly established under these facts.[4]

Once a public official has established that they were acting within their discretionary authority[5], a claim of qualified immunity must be evaluated in two parts. *Saucier v. Katz*,

---

[3]     Defendant Officers' Motion for Summary Judgment makes reference to the "Officers" and their actions on the evening of June 30, 2006; however, for the purposes of this Count, only Reina's conduct is relevant.

[4]     Reina devotes a total of 1.5 footnotes in his Motion and Reply to addressing this second prong of the qualified immunity analysis.

[5]     It is undisputed that Reina has established that he was acting within his discretionary authority in making the arrest of Carolyn. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007).

533 U.S. 194, 200-01 (2001).[6] First, the Court determines whether the facts presented, taken in the light most favorable to Plaintiffs, show that Reina's conduct violated a constitutional right. *Bashir v. Rockdale County*, 445 F.3d 1323, 1327 (11th Cir. 2006) (citing *Saucier*, 533 U.S. at 201). Should the Court answer this question in the affirmative, the next inquiry is whether this right was "clearly established" such that a "reasonable official would understand that what he is doing violates that right." *Bashir*, 445 F3d at 1327 (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

### 1.    Reina's Conduct Violated Carolyn's Constitutional Right

"Plainly, an arrest without probable cause violates the right to be free from an unreasonable search under the Fourth Amendment." *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003). Arrests without a warrant and without probable cause are presumptively unconstitutional. *Davis v. Williams*, 451 F.3d 759, 764 n.8 (11th Cir. 2006). In the context of qualified immunity involving an arrest, an officer must simply show that he or she had arguable probable cause to make the arrest. *Scarbrough v. Myles*, 245 F.3d 1299, 1303 (11th Cir. 2001) (emphasis added). "Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry." *Jones v. Cannon*, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999). The arguable probable cause standard only requires that "under all of the facts and circumstances, an officer reasonably could – not necessarily would – have believed that probable cause was  present." *Crosby v. Monroe*

---

[6]    The *Saucier* analysis is not mandatory; courts may address each prong in the order most appropriate for the case at hand. *See Coffin v. Brandau*; 642 F.3d 999, 1006 (11th Cir. 2011); *Pearson v. Callahan*, 555 U.S. 223 (2009).

*County*, 394 F.3d 1328, 1332 (11th Cir. 2004).   The standard allows officers to make reasonable, but mistaken, conclusions of whether probable cause exists; however it does not shield officers who make unreasonable deductions. *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007). To determine whether Reina had arguable probable cause to arrest Carolyn, the Court views all the evidence and factual inferences therefrom in the light most favorable to Carolyn, the non-moving party, and resolves all reasonable doubts in her favor. *Kingsland v. City of Miami*, 382 F.3d 1220, 1225 (11th Cir. 2004).

The undisputed facts reveal that Reina, Holbrook and Gotsis arrived at the Baileys' hotel room on the evening of June 30, 2006, knowing very little.  They knew that room 603 was registered to "Bailey," and that Travis could be inside.  They knew that Travis had assaulted Torres, disabled his radio and fled the scene approximately one hour earlier.[7]  They also knew that Travis had had a knife on him and had a warrant for his arrest in North Carolina.

Reina submits that Carolyn knew Travis had fled from an officer, was likely being searched for by the police and was a habitual escapee; yet, she still did not call and report him when he arrived back at their hotel room.  These facts, while established during the pendency of Travis' criminal trial and the instant litigation, were unknown to Reina and the other officers at the time they arrived at the Baileys' hotel room.  Moreover, it is evident from Holbrook and Reina's affidavits that they did not know Carolyn was staying in the

---

[7]     Although Carolyn stated that Travis had returned to the hotel room twenty to thirty minutes prior to the officers' arrival.

room  with Travis.  Their first encounter with Carolyn occurred at the door of room 603.[8]

The parties also dispute what happened once the door to room 603 was opened.  The

basis of Reina's (and the officers' belief) that Carolyn assisted Travis' escape or obstructed

law enforcement is that she opened the door with latch engaged, lied about Travis' presence

in the room and stood in the door way as further obstruction to the officers.  Carolyn and

Travis vigorously dispute this account.

Carolyn was arrested and charged with Obstruction/Resisting an Officer without

violence, pursuant to Fla. Stat. § 843.02.[9]  Reina contends that arguable probable cause also

existed to support her arrest on charges of aiding Travis' escape, in violation of Fla. Stat. §

843.12[10], and being an accessory after the fact, in violation of Fla. Stat. § 777.03.[11]

---

[8]        The officers contend they knocked and identified themselves immediately.  Travis
claims they opened the door with his hotel keycard and then waited for Carolyn to unlatch the
security chain.  Carolyn recalls the officers pounding on the door and calling her a "bitch,"
suggesting that they knew she was in the room.  It is not appropriate for the Court to conduct a
credibility determination at this point, however.

[9]        Fla. Stat. § 843.02 states:

Whoever shall resist, obstruct, or oppose any officer as defined in s. 943.10(1), (2),
(3), (6), (7), (8), or (9); member of the Parole Commission or any administrative aide
or supervisor employed by the commission; county probation officer; parole and
probation supervisor; personnel or representative of the Department of Law
Enforcement; or other person legally authorized to execute process in the execution
of legal process or in the lawful execution of any legal duty, without offering or doing
violence to the person of the officer, shall be guilty of a misdemeanor of the first
degree, punishable as provided in s. 775.082 or s. 775.083.

[10]        Fla. Stat. § 843.12 states:

Whoever knowingly aids or assists a person in escaping, attempting to escape, or
who has escaped, from an officer or person who has or is entitled to the lawful
custody of such person, is guilty of a felony of the third degree, punishable as

Obligated to resolve the disputed facts in favor of Carolyn, the Court finds that Reina did not possess arguable probable cause to arrest Carolyn on any of these charges. First, he is not entitled to the benefit of his assumptions. What Carolyn knew about Travis' encounter with and flight from Torres was unknown to Reina at the time of the arrest. Second, questions of material fact exist as to Carolyn's compliance to the officers' request to open the door to her room and surrender Travis. Thus, Reina cannot claim Carolyn attempted to lie to, delay or obstruct the officers who had come to arrest Travis. Indeed, viewing the record in the light most favorable to Carolyn, she opened the door as instructed, raised her hands in acquiescence to the officers' query, and was promptly removed from the room as the officers subdued Travis.

Consequently, no undisputed facts exist that would give Reina a reasonable belief that Carolyn attempted or intended to obstruct him. *See* Fla. Stat. 843.02; *see Coffin v. Brandau*,

---

provided in s. 775.082, s. 775.083, or s. 775.084.

[11]     Fla. Stat. § 777.03 states, in relevant part:

(1) (a) Any person not standing in the relation of husband or wife, parent or grandparent, child or grandchild, brother or sister, by consanguinity or affinity to the offender, who maintains or assists the principal or an accessory before the fact, or gives the offender any other aid, knowing that the offender had committed a crime and such crime was a third degree felony, or had been an accessory thereto before the fact, with the intent that the offender avoids or escapes detection, arrest, trial, or punishment, is an accessory after the fact.

. . . .

(c) Any person who maintains or assists the principal or an accessory before the fact, or gives the offender any other aid, knowing that the offender had committed a crime and such crime was a capital, life, first degree, or second degree felony, or had been an accessory thereto before the fact, with the intent that the offender avoids or escapes detection, arrest, trial, or punishment, is an accessory after the fact.

642 F.3d 999, 1008-09 (11th Cir. 2011) (probable cause found for arrest pursuant to § 843.02 found where plaintiff had actively attempted to thwart deputies' service of process); *see also Skop*, 485 F.3d at 1138.  Similarly, Reina had no reasonable basis to believe that when Carolyn opened the door to room 603, she had knowingly helped or was in the process of helping Travis escape.  *See* Fla. Stat. § 843.12.

Finally, Reina could not have had reasonable belief Carolyn had aided Travis or served as an accessory after the fact.  *See* Fla. Stat. § 777.03; *Ruiz v. Florida*, 388 So. 2d 610, 611-62.  The elements of § 777.03 require "(1) knowledge by the defendant that a felony has been committed; . . . (2) the absence of the statutory familial relationship between the defendant and felon; . . . and (3) aid to the felon with the intent that he escape arrest or punishment for the crime he has committed."  *Ruiz*, 388 So. 2d at 612.

Here, Reina is stuck in a Catch-22.  If Carolyn was read her *Miranda* rights and arrested upon first opening the door (as the officers indicate), Reina lacked a reasonable belief as to the first and third elements of § 777.03.  If events unfolded as Carolyn depicts, and she was arrested after Travis was removed from the room, the officers would have learned that Carolyn is Travis' mother, thereby impugning the second element of § 777.03, for the purposes of an arrest under § (1)(a) of the statute.[12]

In sum, the events surrounding Carolyn's arrest contain significant questions of material fact upon which a reasonable jury could find in her favor and, under Carolyn's

---

[12]     However, a statutory familial relationship is irrelevant for the purposes of a violation of § 777.03(1)©), aiding a first degree felon.

version of events, Reina did not possess actual or arguable probable cause to arrest her. *See Skop*, 485 F.3d at 1143. Summary judgment is therefore not appropriate on this prong of *Saucier*, as Carolyn has demonstrated her Fourth Amendment right has been violated.

> 2.      *Carolyn's Fourth Amendment Right Was Clearly Established.*

The second prong of the qualified immunity defense focuses on whether the law provided Reina with "fair warning" that his conduct violated the *Fourth Amendment*. *See Hope*, 536 U.S. at 741; *Skop*, 485 F.3d at 1144. In *Skop*, the Eleventh Circuit finds that its binding precedent has clearly established that an arrest made without arguable probable cause violates the *Fourth Amendement*. 485 F.3d at 1143. Thus, the Court does not need to search out particularized case law to find that Carolyn's constitutional right has been violated under these facts. *See id.* Carolyn is therefore entitled to have her § 1983 wrongful arrest claim heard by a jury.

> **B.      Count III – Failure to Intervene Against Gotsis (42 U.S.C. § 1983)[13]**

In Count III, Plaintiffs claim that while Holbrook and Reina were utilizing excessive force against Travis inside the hotel room, Gotsis failed to take any action to intervene. They allege that Gotsis was within a few feet of the altercation and had an unobstructed view of Travis, Reina and Holbrook, but he did not attempt to physically or verbally stop the two officers, or call for assistance on his radio. Plaintiffs argue that at the very least, an issue of material fact exists such that this claim should go to the jury.

---

[13]      Defendants do not challenge that material issues of fact exist as to the excessive force claims against Reina and Holbrook (Count II) and that this claim should go to the jury.

Defendants argue that Gotsis was not able to intervene due his having to restrain his agitated police dog. They cite Carolyn and Travis' deposition testimony, namely that Travis begged the officers not to release it and that it barked loudly the entire time, in support, claiming that Gotsis' control of the dog was in Travis' best interests. In addition, Gotsis should be entitled to qualified immunity because he did not commit a constitutional violation and he did not violate clearly established law in failing to intervene while controlling his dog.

When an officer observes the purported use of excessive force and, having both the time and ability to intervene, fails to do so, he or she may be liable for failure to intervene. *Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000*)*; *Sanchez v. Hialeah Police Department*, 357 Fed. Appx. 229, 234 (11th Cir. 2009) (defendant officer was on the same side of the car as the other officer who began beating plaintiff; Eleventh Circuit found under these facts he could be held liable for failure to intervene under § 1983); *see Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986) ("If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under *Section* 1983.").[14]

To state a claim for failure to intervene, it must be alleged that the officer was "in a position to intervene," and the Eleventh Circuit has required specific evidence of how an officer could have observed or stopped the use of excessive force. *Hadley v. Gutierrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008) (summary judgment appropriate where plaintiff

---

[14]     By nature, a claim for failure to intervene must include an underlying act of excessive force. *Cf. Sanchez*, 357 Fed. Appx. at 234. For the purposes of this Motion, the Court assumes that Plaintiffs have adequately established Count II – excessive force in the hotel room.

presented no evidence that defendant police officer could have anticipated or stopped a

fellow officer from punching plaintiff once in the stomach); *Ensley v. Soper,* 142 F.3d 1402,

1407-08 (11th Cir. 1998) (reversing district court and finding that plaintiffs did not show that

another officer could have observed or did observe excessive force).

Viewing the disputed facts in a light most favorable to Travis, the Court finds he has

presented evidence from which a reasonable jury could find that Gotsis could have

intervened and stopped Holbrook and Reina from using excessive force on him.  Plaintiffs

establish that Gotsis was in the room during the entire incident and, while standing just inside

the door of room 603, he would have been within feet of the officers and Travis with an

unobstructed view of the alleged beating.  Holbrook and Reina's alleged use of force lasted

approximately two to three minutes, long enough for Gotsis to intervene. *See Priester*, 208

F.3d at 925 ("[t]wo minutes was long enough for a reasonable jury to conclude that

[defendant] had time to intervene and to order [co-defendant] to restrain the dog").

The Court is not persuaded by Defendants' argument that restraining the dog required

all of Gotsis' physical energy and legally excused him from any duty to Travis.  First, there

is simply no legal precedent to support this argument.  Second, the limited case law of the

Eleventh Circuit suggests that the duty to intervene in cases of excessive force is not merely

a physical one.  *Cf. id.*  In *Priester*, the Eleventh Circuit reversed the grant of summary

judgment where a sergeant stood at the top of a canal and observed the canine officer allow

his dog to attack plaintiff for approximately two minutes.  *Id.*  The sergeant was in voice

contact with the canine officer but did not order him to restrain the dog at all during the

16

attack.  *Id.*

Although factually distinguishable from this case, *Ensley v. Soper* provides valuable guidance.  There, the Eleventh Circuit found that a defendant officer did not fail to intervene against the excessive force used on the plaintiff because he was occupied with restraining another attacker.  142 F.3d at 1407.  The *Ensley* Court also found that plaintiffs had not put forth any evidence that, as a result of his attention to the other attacker, defendant "could have observed or did observe excessive force."  *Id.* at 1408.

In the instant case, plaintiffs have offered sufficient evidence that shows Gotsis did observe Holbrook and Reina's alleged beating of Travis.  Unlike a single instance or unforeseen eruption of violence, here Gotsis would have had time to intervene.  *Cf. Hadley*, 526 F.3d at 1331 (no reasonable jury could find that defendant could have anticipated and stopped co-defendant from punching plaintiff once in the stomach).  Instead, he allegedly did nothing.

Therefore, the question of whether Gotsis' inaction during the two-minute incident was reasonable and whether he could have taken action to stop Holbrook and Reina from beating Travis is a question for the jury.

Defendants' claim of qualified immunity as to Gotsis' failure to intervene is similarly unpersuasive.  The Eleventh Circuit has held in several cases that particularized case law is not required to overcome a claim of qualified immunity in a failure to intervene cause of action.  *Priester*, 208 F.3d at 927.  A police officer's duty to intervene when he witnesses the use of excessive force and has the ability to intervene was clearly established prior to 2006.

17

*See id.* (recognizing this right as of February 1994); *Byrd*, 783 F.3d at 1007 (Eleventh Circuit held this right to be established in 1986). As a reasonable police officer, Gotsis knew or should have known that his duty to intervene was clearly established. *See, e.g., Priester*, 208 F.3d at 927.

### C.      Count VII – False Arrest Against City of Miami Beach

In Count VII, Carolyn alleges the state law tort of false arrest against the City of Miami Beach. The tort of false arrest in Florida is the unlawful restraint of a person against that person's will. *Johnson v. Weiner*, 155 Fla. 169 (1944). The existence of probable cause is an affirmative defense to a false arrest claim. *Bolanos v. Metro Dade County*, 677 So.2d 1005 (Fla. 3d DCA 1996).

The standard of probable cause is met when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) (citations omitted).

Because this Court has found that Officer Reina[15] did not possess arguable probable cause to arrest Carolyn for violation of Fla. Stat. § 843.12, it follows, *a fortiori*, that the City's affirmative defense of probable cause must fail. Therefore, summary judgment on Count VII is not appropriate.

---

[15]      Reina is alleged to be Carolyn's arresting officer.

**D.** **Counts V and VIII – Excessive Force Against Torres, Reina and Holbrook (42 U.S.C. § 1983) and Unlawful Entry Against Reina, Holbrook and Gotsis (42 U.S.C. § 1983).**

Plaintiffs have agreed Defendants' motion for summary judgment on these counts is well taken. Consequently, Defendants' motion for summary judgment is granted on Counts V and VIII.

**E.** **Conclusion**

Consistent with the foregoing, it is **ORDERED AND ADJUDGED** that:

1. Defendants Wayne Holbrook, Jose Reina, Alexander Torres and Dmitri Gotsis' Motion for Summary Judgment (D.E. 51), filed on April 24, 2011, is **GRANTED** in part and **DENIED** in part.

2. Counts V and VII of the Second Amended Complaint are **DISMISSED**

3. Defendant City of Miami Beach Motion for Partial Summary Judgment (D.E. 57), filed on May 9, 2011, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 23rd day of August, 2011.

_____
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**